## STILLMAN BARBER v. SARAH S. B. GEER.

No. 1020. Decided June 26, 1901.

**1. Depositions—Indorsements on Envelope.**

The object of the signature and indorsements required by article 2284 of the Revised Statutes upon the envelope in which depositions are returned was to advise the clerk in what case to file it and who is entitled to have it opened; this is not met by making them upon an inner sealed envelope inclosed in another directed to the clerk, and a deposition so returned should be suppressed on motion. (P. 584.)

**2. Breach of Promise of Marriage—Pleading—Contract by Letter.**

See pleadings held to allege a contract to marry made by correspondence, and to require the giving of a requested instruction confining plaintiff to proof of such written contract, though alleging subsequent oral promises to perform the contract so made by letter. (Pp. 583-585.)

CERTIFICATE OF DISSENT from the Court of Civil Appeals for the Second District, in an appeal from Fisher County.

*L. B. Allen, A. H. Kirby,* and *Theodore Mack,* for appellant.—Where plaintiff alleges a contract in writing, he can not recover on another and a different contract.

A deposition not taken and returned as provided by law should, on proper objection made in time, be suppressed. Rev. Stats., art. 2284.

*McCrea, Green & Ponder,* and *M. Dies,* for appellee.—An offer or acceptance of marriage need not be made in formal language or by express words written or spoken, and where, as in the present case, a

contract by correspondence is alleged, which contract is alleged to have been renewed and ratified orally, it is permissible under such pleading to show a contract of marriage partly in writing and partly in parol, or wholly in writing or wholly in parol. 4 Am. and Eng. Enc. of law, 2 ed., 884; Wood on Lim., sec. 159; Daggett v. Wallace, 75 Texas, 353.

Depositions "if sent by mail, the postmaster or his deputy mailing the same shall indorse thereon that he received them from the hands of the officer before whom they were taken; and the clerk or justice taking them from the postoffice shall indorse on them that he received them from the postmaster and sign his name thereto." These requisites having been complied with, the fact that the officer used two envelopes instead of one in the transmission of the deposition will not render it inadmissible.

BROWN, ASSOCIATE JUSTICE.—In the above styled cause, the honorable Court of Civil Appeals for the Second District has certified for our decision the following questions, upon which there was a dissent in that court:

"On this day came to be heard the motion of appellant to certify to the Supreme Court the points of dissent in this cause, which are, whether or not there was material error in the court's refusal to quash and exclude the deposition of Benjamin B. Sheldon and in refusing to give the special instruction quoted in the opinion heretofore filed." The defendant moved to quash the deposition of Benjamin B. Sheldon, and the facts upon which the question must be determined are stated in the opinion of the court as follows:

" '1. Because the officer taking such deposition did not write his name across the seal of the envelope in which said deposition was returned into court. 2. Because said officer did not indorse on said envelope the names of the parties to the suit. 3. Because said officer did not indorse on said envelope the name of the witness whose deposition had been taken as required by law.'

"Under an order of the court, the original envelopes and deposition are sent up to us for personal inspection, from which it appears that the deposition was inclosed in an envelope and sealed, and the name of Fred C. Olney twice written across the seal, and on the face of the envelope was indorsed the following: 'To the Honorable the District Court of Fisher County, within and for the State of Texas, A. D. 18—.

" 'Inclosed is the deposition of Benjamin B. Sheldon of South Kingston, Rhode Island, to be used in hearing of a suit now pending before said court wherein Mrs. Sarah S. B. Geer is plaintiff and Stillman Barber is defendant, taken at the request of said plaintiff and sealed up by me. Fredk. C. Olney, Notary Public.'

"This envelope was inclosed in another one, which was sealed up, but the officer's name was not written across the seal. A receipt, however, was in these terms: 'Received from the hands of F. C. Olney, A. B. Rodman, Asst. P. M.' Also underneath the above were the

proper indorsements of the clerk of the District Court of Fisher County, one, that he received the package from the postoffice at Roby, Texas (the county seat of Fisher County), and filed same on the 10th day of September, 1900, and another that he had opened the package on the 10th day of September, 1900, at the request of L. B. Allen, the defendant's attorney. On the face of this envelope, in the right hand upper corner, were the necessary postage stamps and the postmark, 'Wakefield, R. I., Sep. 6, P. M. 1900.' In the left hand upper corner were: 'From F. C. Olney, Wakefield, R. I.' Then came the address as follows: 'D. T. Bullock, Esq., Clerk Dist. Court, Fisher Co., Roby, Texas.'"

That portion of the record necessary for the determination of the second question is as follows:

"The second paragraph of the court's charge informed the jury that: 'In order to constitute a valid and binding contract of marriage, there must be an offer of marriage or promise to marry by the one party, which offer or promise must be made known to and accepted by the other party. The offer of marriage by the one party and its acceptance by the other need not be expressed in any formal language either written or spoken. It is sufficient to establish a contract of marriage if it is shown by a preponderance of the evidence that the parties had mutually agreed to marry each other.'

"The defendant requested the court to instruct the jury as follows: 'Unless you believe from the evidence that a contract of marriage was made and entered into by and between plaintiff and defendant (as a contract has been defined in the charge of the court) by correspondence, as alleged in plaintiff's third amended petition herein, you will find for the defendant.'"

The allegations of the plaintiff's petition upon the subject of the contract of marriage are as follows:

"That in the month of June, 1897, while she resided in the city of Providence, Rhode Island, and the defendant in Texas, she entered into a correspondence with him which was continued until the 19th day of April, 1898.

"That during said time and in the course of said correspondence, and in several of his letters to her, he expressed his admiration, love, and affection for her, and made, in pursuance thereof, propositions of marriage to her which were by her accepted, whereby they became engaged to be married, agreeing, the defendant on his part to marry plaintiff, and the plaintiff on her part to marry defendant. That in pursuance of said contract and agreement, she, at the special instance and request of defendant and for the purpose of carrying out her part of said marriage contract, closed out all her personal effects at her home in Rhode Island at a great sacrifice, and on about the 6th day of May, 1898, started for Texas and the home of defendant, paying her own expenses, arriving at Roby, Texas, on the 13th day of said month, where defendant met her and carried her to his home.

"That it was agreed and understood between them that they should be married as soon as she should reach his home or within a reasonable time thereafter, and relying fully and implicitly in the honor and integrity of defendant and believing he would in all things comply with his said contract, she was induced to sell out her personal effects as aforesaid, make her said trip to Texas, and take up her abode in the residence of said defendant, That upon her arrival at the residence of defendant and on sundry and divers times thereafter, she and defendant discussed their relation to each other and their matrimonial engagement, and the defendant at all times expressed much love and affection for her, and at all times expressed himself so as to assure her that he would certainly carry into effect his agreement with and would marry her, but from time to time put the matter of their marriage off to some future time indefinite, assigning therefor some reasons, many of which she does not now remember, but at all times assuring her that he would carry out their engagement and would marry her in a short while.

"That defendant so acted and kept up such assurances of marriage with her until January 24, 1899, at which time he told her he would not marry her."

To the first question, we answer, the trial court erred in refusing to suppress the deposition of B. F. Sheldon.

Article 2284, Revised Statutes, prescribes the manner of taking and returning depositions in these words: "Upon the appearance of the witness, the officer to whom the commission is directed shall proceed to take his answers to the interrogatories. The answers shall be reduced to writing, and shall be signed and sworn to by the witness. The officer shall certify that the answers of the witness were signed and sworn to by the witness before him, and shall seal them up in an envelope, together with the commission and interrogatories and cross-interrogatories, if any, and shall write his name across the seal, and indorse on the envelope the names of the parties to the suit and of the witnesses, and shall direct the package to the clerk of the court or justice of the peace from which the commission issued." The object of this statute is to have the indorsements made upon the outer covering of the package containing the deposition, so that when the clerk of the court to which the deposition is returned shall receive it, he will know in what case to file the paper and also who is entitled to have it opened for examination. Returned in the manner the deposition was in this case, the clerk could not know that it was a deposition nor in what case, and could not properly open it at the request of any person, because it was impossible for him to tell to what suit in that court it belonged. These requirements are strictly statutory and must be substantially complied with.

To the second question, we answer that the special charge requested by the defendant should have been given, because the allegations in the petition were of a contract made in writing by letters passing from

one to the other, and the allegations of what transpired after the defendant in error came to Texas do not set up any contract, but simply allege the promises and agreements on the part of the plaintiff in error to keep and perform the contract entered into by letters.